IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                     Case No. 13-10071-JTM

AMOS BECKNELL,

          Defendant.

MEMORANDUM AND ORDER

The court held a hearing on Amos Becknell's Motion to Suppress (Dkt. 17) on July 22, 2013. At the hearing, Becknell withdrew his argument that he was entitled to a *Franks* hearing. Becknell's remaining argument is that the warrant was not supported by probable cause. After reviewing the parties' briefs and oral arguments, the court denies the motion.

**I. Relevant Background**

In March of 2011, a confidential informant with personal knowledge tipped off the Wichita Police Department that he or she had witnessed a black male selling crack cocaine on numerous occasions at the residence of 1115 N. Green, Wichita, Kansas. From March 25 to March 31, 2011, officers searched the trash in a cart that was sitting within one foot of the curb in front of 1115 N. Green three times. The first time, the officers found mail belonging to Barbara Scott and Barbara Becknell—all mail having been addressed to 1115 N. Green—and loose tobacco and marijuana. The second time, officers collected loose cigar tobacco and marijuana. The third time, officers collected

two large corners of plastic sandwich bags containing white powder residue, eleven plastic sandwich bags with the corners torn off, one plastic sandwich bag that had a knot tied in the top with the bottom ripped off, four additional plastic sandwich bags that had been torn, and loose marijuana. The white powder located in the sandwich bags tested positive for cocaine.

Also, on March 30, officers conducted surveillance at 1115 N. Green and observed a number of persons arriving at the residence by car, going in for a short period of time, and then leaving. Officers believed this conduct to be consistent with drug sales. An investigation of the residence showed that Becknell's girlfriend used the address in early March, 2011. Officers also discovered that Becknell, a black male with a documented gang history and prior convictions for drug and weapons offenses, also used the address in early March 2011. Based on an affidavit stating the above information, officers applied for and received a search warrant authorizing a "no knock" entry.

Prior to executing the search warrant, law enforcement observed Becknell leaving the residence and initiated a traffic stop. The officers observed marijuana in plain view inside Becknell's vehicle. After removing the occupants from the vehicle, the officers asked Becknell if he would provide the keys to the residence so the entry team would not have to damage the doors entering the house. Becknell provided the keys and informed officers that there were firearms located inside the residence.

In the execution of the search warrant, the officers collected approximately 12.96 grams of cocaine, three firearms, a bullet proof vest, marijuana, mail belonging to the

defendant, a knotted zip lock bag, mail addressed to Barbara Becknell, and currency. Becknell argues that all of the evidence found as a result of the execution of this search warrant must be suppressed, because (1) the affidavit supporting the warrant included intentionally or recklessly false statements and (2) without this false information, the warrant was not supported by probable cause.

**II. Legal Standard**

Probable cause must support the warrant authorizing the government's search of a defendant's residence. *See* U.S. CONST. amend. IV. (stating "no warrants shall issue, but upon probable cause"). The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist. Court*, 407 U.S. 297, 313 (1972). Probable cause to search exists "when the facts … would [lead] a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched." *United States v. Harris*, 369 F.3d 1157, 1165 (10th Cir. 2004). It requires "more than mere suspicion but less evidence than is necessary to convict." *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000). It also "undoubtedly requires a nexus between suspected criminal activity and the place to be searched." *Id*. at 1006. However, "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Illinois v. Gates*, 462 U.S. 213, 235 (1983) (quotations omitted). "An affidavit in support of a search warrant must contain facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity." *Danhauer,* 229 F.3d at 1006.

Veracity, reliability, and basis of knowledge are "highly relevant" as to whether a tip can support probable cause. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). Veracity concerns whether there is reason to believe that the informant is telling the truth, including whether he faces criminal charges or whether his statement is against his own penal interest. *United States v. Quezada-Enriquez*, 456 F.3d 1228, 1233 (10th Cir. 2009) (citations omitted). "[W]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *Id.* (citing *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004)). Reliability determinations entail inquiry into whether the informant has provided accurate information in the past. *Id.* (citations omitted). As for basis of knowledge, a firsthand observation is entitled to greater weight than secondhand information. *Id.* (citation omitted).

**III. Analysis**

This court's analysis begins with a summary of the evidence presented in the government's probable-cause affidavit and the terms of the search warrant issued by the magistrate judge. A confidential informant told SCAT officer Ryan Schomaker that he or she had been present on numerous occasions when a black male occupant of 1115 N. Green had sold crack cocaine at that location. Acting on this tip, law enforcement officers performed three "trash pulls" within a six-day period, examining the trash that had collected in a receptacle located within one foot of the curb in front of 1115 N. Green. They found mail addressed to the residence on the first trash pull, establishing that those residing at 1115 N. Green used the trash cart. In every trash pull, officers

found loose marijuana. On the third and final trash pull, officers found plastic sandwich bags containing white powder residue that tested positive for cocaine. Officers conducting surveillance on the evening before the third trash pull noticed a pattern of people driving to the residence and then entering and leaving after a very short time, which officers believed was indicative of drug selling activity. Information checks revealed that Amos Becknell, a man matching the CI's description, had used the address earlier that month. A background check revealed that Becknell is a documented gang member with a history of prior drug- and firearms-related arrests. Based on this evidence, a district court judge in Sedgwick County approved a search warrant to search for cocaine, marijuana, paraphernalia, and currency and firearms associated with the sale of cocaine.

Becknell argues that the warrant was not supported by probable cause because there was insufficient information in the affidavit about the criminal informant ("CI"). Becknell argues that with no information about the officer's past experience with the CI, the veracity of the CI, and whether or not the CI was facing charges, the reference to the CI does not support probable cause. The government argues that information about the CI was unnecessary to support the warrant. The officers were merely tipped off by the CI and began investigating 1115 N. Green in response.

The court finds that the CI's tip should appropriately factor into the probable cause analysis. The CI's tip was corroborated in this case when the officers found cocaine residue in the trash outside the residence the CI had indicated cocaine was being sold from. The officers' observation of several people showing up at the residence

and then leaving after a short while also corroborated the CI's tip because this activity—although possibly innocent—is also consistent with drug dealing. This independent corroboration of the CI's information eliminated the need for establishing the CI's veracity in the warrant application. *See Quezada-Enriquez*, 456 F.3d at 1233. The warrant application provided no facts regarding the CI's reliability in this past, reducing the weight the tip should be accorded. *See id.* However, the tip was based on the CI's firsthand account of being present when numerous drug deals occurred at the residence. This entitles the tip to greater weight than if it were based on secondhand knowledge. *Id.*

The court does not decide whether the CI's tip alone would support probable cause for issuing a warrant. Rather, the court decides whether the totality of the circumstances—including the CI's tip—supports a finding of probable cause. As the government argued, the CI's tip was merely the catalyst that began the investigation. Viewing the totality of the circumstances laid out in the warrant application, probable cause to issue the search warrant existed. The cocaine and addressed mail found in the trash cart in front of 1115 N. Green, which corroborated the CI's tip about cocaine dealing at that very address, provided the required nexus between the suspected criminal activity and the place to be searched. *See Danhauer*, 229 F.3d at 1006. A prudent person having reviewed the facts contained in Schomaker's warrant application would reasonably believe that a search of 1115 N. Green would uncover the contraband or evidence of criminal activity the warrant set out. *See id.*

Accordingly, the court holds that the warrant was based on an appropriate finding of probable cause. Becknell's motion is denied.

IT IS THEREFORE ORDERED this 23rd day of July, 2013, that Becknell's Motion to Suppress (Dkt. 17) is denied.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE